UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| SHEILA R. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:09-CV-208 |
| | ) | (VARLAN/SHIRLEY) |
| DAN HARTLEY, individually, | ) | |
| DR. DAVID LYNCH, individually, | ) | |
| NURSE JOHN DOE, individually, | ) | |
| DETENTION HEALTH CARE | ) | |
| ASSOCIATES, INC., and | ) | |
| ANDERSON COUNTY, TENNESSEE, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This civil action is before the Court on defendant Dr. David Lynch's Motion for Summary Judgment [Doc. 27]. Plaintiff filed a response in opposition to defendant's motion [Doc. 32]. Defendant filed a reply to plaintiff's response [Doc. 33]. The motion for summary judgment is now ripe for the Court's consideration.

**I.    Background**

Plaintiff filed the original complaint in this case on May 12, 2009, alleging violations of 42 U.S.C. § 1983 and related state laws [Doc. 1]. Defendants Detention Health Care Associates, Inc. ("DHCA") and Dan Hartley filed an answer on July 24, 2009 [Doc. 6]. Defendant Anderson County, Tennessee filed an answer to the complaint on August 4, 2009 [Doc. 9]. Plaintiff filed an amended complaint asserting additional state law claims on

November 25, 2009 [Doc. 22]. On January 28, 2010, defendants DHCA, Mr. Hartley, and Dr. David Lynch filed an answer to the amended complaint [Doc. 23].

Plaintiff's allegations stem from the circumstances surrounding her arrest and subsequent detention in May 2008. Plaintiff was arrested on May 9, 2008 and charged with failure to appear in violation of T.C.A. § 39-16-609, aggravated burglary in violation of T.C.A. § 39-14-403, and public intoxication in violation of T.C.A. § 39-17-310 [Doc. 22, ¶ 11]. On the same day, plaintiff was taken to the Anderson County Detention Facility ("ACDF") [*Id.*, ¶ 12].

On May 10, 2008, Officer Jason May completed an inmate medical form for plaintiff [*Id.*, ¶ 14]. The form indicates that plaintiff suffered from medical problems, including diabetes, for which she required medication [*Id.*, ¶ 15]. The words "diabetic" and "not epileptic but has had seizures" were typed near the end of the form [*Id.*]. While completing the form, plaintiff told Officer May that she felt ill and needed her diabetes medication [*Id.*, ¶ 16]. Officer May informed another officer, Lieutenant Booey, of plaintiff's medical needs [*Id.*]. Lieutenant Booey told plaintiff that ACDF needed to verify her medications before dispensing them to her [*Id.*].

Later that day, plaintiff was examined by Dan Hartley, a nurse employed by DHCA [*Id.*, ¶¶ 7, 17]. DHCA contracts with Anderson County to provide medical services to inmates at ACDF [*Id.*, ¶ 6; Doc. 27, ¶ 4; Doc. 28, ¶ 4]. Plaintiff informed Nurse Hartley that she suffered from diabetes and needed her medication [Doc. 22, ¶ 17]. Nurse Hartley asked plaintiff to identify her treating physician and to execute an authorization to release medical

2

information [*Id.*]. Plaintiff executed the medical release and returned it to Nurse Hartley [*Id.*].

On May 11, 2008, plaintiff was examined by another nurse, defendant John Doe, to whom she also explained that she was diabetic and needed medication [*Id.*, ¶ 18]. Nurse John Doe told plaintiff that ACDF did not have a medical release on file for her [*Id.*]. Plaintiff executed a second release at the direction of Nurse John Doe [*Id.*, ¶ 18].

Over the next few days, plaintiff continued to ask jailers and medical personnel for her diabetes medication because she had yet to receive such [*Id.*, ¶ 19]. On May 14, 2008, an unknown jailer checked plaintiff's blood sugar after plaintiff "repeatedly begged him to do so" [*Id.*, ¶ 20]. The jailer informed defendant DHCA that plaintiff's blood sugar was elevated [*Id.*].[1]

Two more days passed, during which time plaintiff failed to receive her diabetes medication [*Id.*, ¶ 21]. By May 16, 2008, plaintiff had grown increasingly ill and her vision was becoming blurry [*Id.*]. She again asked for her diabetes medication and expressed concern that she would become blind in her "good eye" if she did not receive her medication [*Id.*].[2] Four days later, on May 20, 2008, Nurse Hartley completed a DHCA inmate health appraisal form and conducted a physical examination of plaintiff [*Id.*, ¶ 22]. During the

---

[1] Plaintiff's blood sugar was in the range of 500 to 525 [Doc. 22, ¶ 20]. Plaintiff explains that "normal blood sugar range is anywhere between 70 and 170, depending on the time of day" [*Id.*].

[2] Plaintiff was already blind in one eye as the result of a childhood accident unrelated to her diabetic condition [Doc. 22, ¶ 21, n.2].

3

exam, Nurse Hartley noticed that plaintiff's blood pressure was elevated and administered 0.2 milligrams of Clonidine to plaintiff [*Id.*, ¶ 23]. Plaintiff discussed her diabetic condition with Nurse Hartley and executed a third authorization to release medical information [*Id.*, ¶ 24]. Also on May 20, 2008, plaintiff placed a collect call to her mother, who brought plaintiff's diabetes medication to ACDF [*Id.*, ¶ 25].

Plaintiff became increasingly ill on May 20, 2008 [*Id.*, ¶ 26]. At approximately 10:00 p.m.–more than five hours after her last meal–plaintiff received twenty-two units of 70/30 insulin [*Id.*, ¶ 27]. Later that evening, plaintiff began to lose consciousness and to experience vision loss, which prompted plaintiff and other inmates to seek help from the jailers [*Id.* ¶ 28]. An officer checked plaintiff's blood sugar and, finding that it was low, provided plaintiff some Kool-Aid [*Id.*, ¶ 29]. Plaintiff, however, was physically unable to drink the Kool-Aid [*Id.*].

Plaintiff became non-responsive to verbal stimulus and unbalanced, and, after being helped to the floor by Corporal Monroe, Officer Phillips and Officer White, began convulsing [*Id.*, ¶ 30]. Officer Parker directed that Emergency Medical Services ("EMS") be contacted [*Id.*]. When EMS arrived at approximately 12:35 a.m. on May 21, 2008, plaintiff was lying unconscious on the floor [*Id.*, ¶ 31]. EMS transported plaintiff to the Methodist Medical Center in Oak Ridge, Tennessee, where plaintiff was admitted as a patient [*Id.*, ¶¶ 32, 33]. Plaintiff remained hospitalized for a total of three days, the first two of which she spent unconscious and/or unresponsive [*Id.*, ¶ 33]. After gaining consciousness, plaintiff became aware that she no longer had any vision in her left eye [*Id.*].

Plaintiff was released from the custody of the ACDF on May 22, 2008 [*Id.*, ¶ 34]. As of the filing of this action, plaintiff's vision had improved slightly, but it nevertheless remains "limited" and "severely distorted" [*Id.,* ¶ 33]. Plaintiff continues to "endure pain and suffering" and requires medical treatment for her injuries [*Id.*, ¶ 35].

With respect to Dr. Lynch, plaintiff alleges, upon information and belief, that Dr. Lynch is assigned to ACDF for the purpose of supervising and consulting with the employees of DHCA, providing direct care to inmates of ACDF, and establishing protocol for the medical treatment of inmates at ACDF [*Id.*, ¶ 7 n.1]. Plaintiff avers that she is unclear whether Dr. Lynch provided direct care to her [*Id.*].

Dr. Lynch filed a motion for summary judgment in which he argues that he should be dismissed from this case [*see* Doc. 27]. Dr. Lynch also requests that the Court "award him reasonable attorney fees and tax the costs to the Plaintiff" [*Id.*]. The Court has carefully considered Dr. Lynch's motion for summary judgment, the response, and the reply in light of the applicable law. For the reasons that follow, the motion for summary judgment is granted.

## II. Motion for Summary Judgment

### A. Standard of Review

Summary judgment is proper only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that no genuine issues of material fact exist.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). The Court views the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Catrett*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The judge does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

B.     **Analysis**

In support of his motion for summary judgment, Dr. Lynch contends that the undisputed material facts demonstrate that Dr. Lynch (a) was not employed by DHCA in May 2008; (b) did not provide medical treatment to plaintiff while she was incarcerated at ACDF in May 2008; and (c) did not provide any consulting services to DHCA prior to his employment with DHCA on or about June 23, 2008 [*see* Doc. 27; Doc. 28]. Dr. Lynch argues that he therefore could not have caused plaintiff any injury [*see id.*].

Dr. Lynch submits his own affidavit as well as the affidavit of Rich Ellis, the president of DHCA, in support of these contentions [*see id.*]. The affidavits state that Dr. Lynch was hired by Mr. Ellis on or about June 23, 2008 to provide staff physician services and related consulting services to DHCA facilities [Doc. 27; Doc. 27-1, ¶ 3; Doc. 27-2, ¶ 4; Doc. 28, ¶ 10]. They also declare that Dr. Lynch did not provide any treatment and/or related consulting services to either DHCA facilities or plaintiff during the time relevant to plaintiff's causes of action [Doc. 27; Doc. 27-1, ¶¶ 4-6; Doc. 27-2, ¶¶ 5-6; Doc. 28].

Plaintiff argues in response that there is a genuine issue of material fact "with regards to DHCA's employment of Dr. Lynch and his predecessor" [Doc. 32]. In support, plaintiff relies only on the affidavits of an investigator of plaintiff's counsel's law firm, Shyane Cooper, and plaintiff's counsel [*see* Doc. 32]. The affidavit of plaintiff's counsel states that he has been unable to determine, independent of Dr. Lynch's counsel, whether Dr. Lynch

7

was an employee or agent of DHCA during the time relevant to this lawsuit [*see* Doc. 32-2, ¶¶ 2-3].[3]

Mr. Cooper's affidavit declares that he interviewed a nurse at ACDF, Amanda Foust, and she informed him that nurses assigned to the jail consult with two physician's assistants and a physician, Dr. Lynch, who also is in charge of overseeing the jail operation [Doc. 32-1, ¶¶ 2-3]. Mr. Cooper understood this to mean that Dr. Lynch was the doctor in charge of the jail's medical operations at the time of Ms. Smith's injuries [*see id.*]. Mr. Cooper's affidavit, however, is silent as to whether he learned that Dr. Lynch ever provided medical treatment to plaintiff and to any dates Dr. Lynch was employed by, or provided consulting services to, DHCA [*see* Doc. 32-1]. Indeed, Ms. Foust's affidavit, submitted by Dr. Lynch, states she never informed him of such information [*see* Doc. 33-1].

The Court finds that Dr. Lynch has presented evidence sufficient to support a motion for summary judgment in his favor. Despite her attempt, plaintiff has failed to point to evidence in the record contradicting, or even questioning, Dr. Lynch's assertions that he was not employed by DHCA at the time of plaintiff's incarceration, that he did not consult with DHCA prior to his employment in June 2008, and that he did not provide any medical services to plaintiff while she was incarcerated at ACDF. Neither Mr. Cooper's understanding of Ms. Foust's statement nor plaintiff's counsel's failure to confirm the

---

[3] Dr. Lynch submitted the affidavit of his counsel stating that she informed plaintiff's counsel by letter, which is attached as an exhibit to the affidavit, that Dr. Lynch was not employed by DHCA at the times relevant to this lawsuit [*see* Doc. 33; Doc. 33-1, ¶ 3].

appropriate party raises a genuine issue of material fact. Based on the record, a reasonable factfinder could not find that Dr. Lynch is liable to plaintiff for the allegations set forth in the amended complaint.

Plaintiff also appears to argue that "[i]f Defendant Lynch was not in fact employed [at DHCA] at the time in question, some other doctor must have been" and that counsel for defendants "has not indicated who, if anyone else, preceded Dr. Lynch, and when, if at all that previous doctor shifted duties to Defendant Lynch" [Doc. 32]. This argument does not defeat Dr. Lynch's motion for summary judgment. Whether Dr. Lynch's counsel has identified Dr. Lynch's predecessor is irrelevant to the motion before the Court.

### III. Request for Attorneys' Fees

Dr. Lynch also requests attorneys fees. Plaintiff has brought this case under 42 U.S.C. § 1983, a civil rights statute which makes 42 U.S.C. § 1988 applicable. *See* 42 U.S.C. § 1988(b). Section 1988 provides that "[i]n any action or proceeding to enforce a provision of . . . [§ 1983] . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." *Id.*

Pursuant to Sixth Circuit precedent, a prevailing defendant may recover attorneys fees under Section 1988 only "upon a finding by the district court that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Wolfe v. Perry*, 412 F.3d 707, 720 (6th Cir. 2005) (citing *Wayne v. Vill. of Sebring*, 36 F.3d 517, 530 (6th Cir. 1994)). Prevailing defendants "are entitled to attorneys fees much less frequently" than prevailing plaintiffs. *Id.* (citation omitted). The Court does not

9

consider this action as rising to the level required for an award of attorneys fees pursuant to Section 1988. It therefore declines to exercise its discretion and award defendant attorneys fees in this action.

## IV. Conclusion

The record in this case shows that there is no genuine issue as to whether Dr. Lynch was employed by DHCA at the time relevant to plaintiff's lawsuit. The record also shows that there is no genuine issue as to whether Dr. Lynch provided medical treatment to plaintiff while she was incarcerated at ACDF in May 2008 or whether Dr. Lynch provided consulting services to DHCA prior to his employment with DHCA. Accordingly, Dr. David Lynch is entitled to judgment as a matter of law and his Motion for Summary Judgment [Doc. 27] is **GRANTED.** All of plaintiff's claims as to defendant Dr. David Lynch are hereby **DISMISSED with prejudice** and defendant Dr. David Lynch is **DISMISSED** from this case. Defendant's request for attorneys fees also is hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE